IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TWANETTE J.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 19 C 201 |
| v. | ) |
| | ) Magistrate Judge Beth W. Jantz |
| ANDREW SAUL, Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Twanette J.'s application for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). [Dkt. 11.] For the reasons that follow, Plaintiff's motion for summary judgment [Dkt. 23, Pl.'s Mot.] is granted, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.

## BACKGROUND

**I.    Procedural History**

On April 21, 2015, Plaintiff filed a claim for DIB, alleging disability since December 3, 2014, due to back injury, arthritis, diabetes, high blood pressure, and depression. [Dkt. 15, R. 105.] Plaintiff's claim was denied initially and upon reconsideration, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on August 15, 2017. [R. 17-29.] Plaintiff personally appeared and testified at the hearing and was represented by counsel. [R. 17.] Vocational expert ("VE") Cheryl R. Hoiseth also testified. [*Id.*] On December 20, 2017, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. [R. 17-29.] The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017).

**II.    The ALJ's Decision**

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 17-29.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of December 3, 2014. [R. 19.] At step two, the ALJ concluded that Plaintiff had the severe impairments of degenerative disc disease and diabetes mellitus. [R. 19-23.] At step three, the ALJ concluded that those impairments, alone or in combination, do not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [R. 19-23.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary

2

work except that she could climb ramps and stairs frequently; climb ladders, ropes, and scaffolds occasionally; and frequently stoop, kneel, crouch, or crawl; but that she would be off task up to 15% of the workday and absent as much as one day per month after any probationary period. [R. 23-27.] Although the ALJ concluded at step four that Plaintiff would be unable to perform her past relevant work as a stock clerk (heavy, semi-skilled) or as a cardboard box maker (medium, unskilled), she concluded at step five that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as order clerk, charge account clerk, or information clerk. [R. 27-29.] Accordingly, the ALJ concluded that Plaintiff is not disabled under the Social Security Act. [R. 29.]

## DISCUSSION

### I. Judicial Review

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe*

*ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.* at 327.

The ALJ also has a basic obligation to develop a full and fair record, and to "build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837. Accordingly, the ALJ's explanation of her analysis of the evidence must contain adequate detail and clarity. *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014). Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008).

4

**II.     Analysis**

Plaintiff makes a number of arguments in support of her request for reversal, including that the ALJ erred: (a) in determining that Plaintiff's impairments alone or in combination did not meet or medically equal a Listing, (b) in her RFC determination, and (c) in her step four determination by failing to incorporate all of Plaintiff's limitations into the hypothetical questions addressed to the VE. [Dkt. 24, Pl.'s Mem.] Specifically, Plaintiff argues that the ALJ's step three analysis was perfunctory as to certain Listings, omitted consideration of another relevant Listing, and improperly disregarded Plaintiff's treating physicians' opinions as to both her mental illness and her diabetes. [*Id.* at 5-11.] Further, she says, the ALJ failed in her RFC assessment to undertake a functional analysis in accordance with SSR 96-8p, cherry picked from the medical records to reach her conclusions, and erred in discounting Plaintiff's complaints about the nature and extent of her symptoms. [*Id.* at 11-14.] According to the Commissioner, on the other hand, the ALJ's step three analysis was comprehensive and appropriately considered the relevant evidence, and the ALJ properly weighed the opinion evidence of Plaintiff's treating medical providers and provided adequate reasons for discounting them. [Dkt. 33, Def.'s Mem.] Finally, the Commissioner says, the physical and mental RFC determination made by the ALJ was supported by substantial evidence, and the ALJ appropriately evaluated Plaintiff's subjective symptoms complaints and reasonably concluded from her failure to comply with certain prescribed treatments that Plaintiff had overstated her limitations. [*Id.* at 9-19.]

After reviewing the record and the briefs submitted by the parties, this Court agrees with Plaintiff that the ALJ erred in evaluating the medical opinion evidence of Plaintiff's treating

5

providers, affecting both the step three analysis and the RFC determination. Because this error alone warrants remand, the Court does not reach Plaintiff's additional arguments.

A treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is well-supported by medical findings and not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(c); *Gerstener v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018).[2] More weight is given to the opinions of treating physicians because they are most familiar with the claimant's conditions and circumstances. *Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016). If a treating physician's opinion is not given controlling weight, the ALJ must determine what value the assessment merits. *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010). The regulations prescribe that the ALJ is to evaluate medical opinions according to the following factors: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. 20 C.F.R. § 404.1527(c). Where the ALJ rejects a treating physician's opinion, she is "required to provide a sound explanation." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013); *see also Campbell*, 627 F.3d at 306.

In this case, the ALJ discounted opinion evidence given both by Plaintiff's psychologist, Kelly Hird, as having little weight, and by Plaintiff's primary care physician Melinda Sykes-

---

[2] The Social Security Administration has modified the treating-physician rule to eliminate the "controlling weight" instruction. *See* 20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources."). However, the new regulations apply only to disability applications filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply."). Plaintiff's application in this case was filed in 2015, and therefore the ALJ was required to apply the former treating physician rule.

6

Bellamy, without commenting on the weight assigned to her opinions. [R. 22-27.] Because Dr. Sykes-Bellamy is Plaintiff's treating physician and Dr. Hird is plaintiff's treating psychologist, their opinions on the nature and severity of Plaintiff's limitations were entitled to controlling weight if they were well supported by medical findings and consistent with other record evidence. *See Gerstener*, 879 F.3d 257, 261 (7th Cir. 2018). The ALJ concluded they were not, and thus was obliged to provide a sound rationale for her decision. *Roddy*, 705 F.3d 636.

Dr. Sykes-Bellamy treated Plaintiff from October 30, 2015, to July 20, 2017, and provided her opinion on Plaintiff's diabetes mellitus and the resulting limitations it imposed on Plaintiff. [R. 614-16, 725-741.] Dr. Sykes-Bellamy diagnosed Plaintiff with adult onset diabetes mellitus, and noted that she had suffered ten episodes of hypoglecemia within the past year, as well as neuropathy causing numbness and tingling, difficulty with activities of daily living, the inability to hold a cup, and inability to walk long distances. [R. 614-16.] She opined that Plaintiff could not stand and/or walk for six to eight hours daily, but rather only for five minutes at a time, and that she could only lift or carry two pounds or less with any regularity. [R. 616.]

The ALJ appears to have rejected Dr. Sykes-Bellamy's opinion outright, although she failed to state what weight she assigned the opinion. [R. 26.] Instead, she stated only that the restrictions Dr. Sykes-Bellamy described were "so extreme as to be implausible," observing that Plaintiff's treatment had been conservative, consisting primarily of physical therapy and medication. [*Id.*] It was an omission to fail to articulate the weight given to Dr. Sykes-Bellamy's opinion, and moreover, the ALJ's terse analysis both fails to adequately discuss the regulatory factors and relies on a rationale that is in any case unsound. *See* C.F.R. § 404.1527(c); *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (error not to determine weight of treating physician's

7

opinion in accordance with regulations); *Scrogham*, 765 F.3d at 696 (error to use faulty logic to interpret evidence as inconsistent).

Whether Plaintiff's prior treatment had been conservative does not itself contradict Dr. Sykes-Bellamy's opinion, and it was error for the ALJ not to explain ***why*** she believed that it did. *Scrogham*, 765 F.3d at 696-98. Dr. Sykes-Bellamy's opinions were supported by treatment records which included reference to Plaintiff's high glucose levels and lack of appetite, sharp stabbing muscle spasms, inability to sleep because of pain, and numbness and tingling radiating down both of her legs. [R. 374-86, 432-37, 726-41.] The ALJ rejected the opinion as implausible, however, without explaining the import of this evidence. Nor does the record demonstrate that the ALJ explored any reasons for lack of more aggressive medical care before drawing inferences about Plaintiff's condition. *See Craft,* 539 F.3d at 679. Without identifying ***how*** the evidence led to her conclusion, the ALJ failed to build a requisite bridge between the two. *Roddy*, 705 F.3d at 636.

The Commissioner's assertion that the ALJ properly discounted references to Plaintiff's high blood-sugar levels and reported numbness and tingling in Dr. Sykes-Bellamy's treatment notes is similarly unavailing. According to the Commissioner, the ALJ could do so because it was based on Plaintiff's subjective complaints, rather than objective medical evidence. [*Id.*] "But the absence of objective medical corroboration for a complainant's subjective accounts of pain does not permit an ALJ to disregard those accounts. To the contrary, an ALJ must consider subjective complaints of pain if a claimant has established a medically determined impairment that could reasonably be expected to produce the pain." *Ghiselli v. Colvin*, 837 F.3d 771, 777 (7th Cir. 2016)

(internal quotation omitted). Notably, the agency examiners and the ALJ concluded that Plaintiff's impairments could be expected to produce the symptoms she had alleged. [R. 24]

Although the Commissioner correctly observes that the ALJ need not discuss every regulatory factor when weighing medical opinions, citing *Elder v. Astrue*, 529 F.3d 408, 415-416 (7th Cir. 2008), the decision here is not like in *Elder*, where the ALJ relied on and articulated several of the regulatory factors in assessing the weight of the treater's opinion. The ALJ did not articulate a similar exercise in this instance, and she failed to adequately explain the rationale that she provided.

The Commissioner highlights other evidence in the record that might have supported the ALJ's decision to reject the doctor's opinion evidence, such as that she is a family practitioner and not an endocrinologist, her opinion was provided in response to a questionnaire, and objective testing had not shown evidence of Plaintiff's neuropathy. [*See* Def.'s Mem. at 14.] It is however well settled that the Court's review is limited to the reasons that were actually given by the ALJ, and the Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace. *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) (citing *SEC v. Chenery Corp.,* 318 U.S. 80, 87–88); *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) (explaining that if an appellate brief were allowed to substitute for an unsatisfactory ALJ decision, "[i]t would displace the responsibility that Congress has delegated to the Social Security Administration – the responsibility not merely to gesture thumbs up or thumbs down but to articulate reasoned grounds of decision based on legislative policy and administrative regulation – into the Justice Department, which represents the agency in the courts.")

In any event, the Commissioner's arguments are not persuasive. The Seventh Circuit has repeatedly held that "complaints of severe pain stemming from . . . neuropathy need not be confirmed by diagnostic tests." *Engstrand*, 788 F.3d at 660 (7th Cir. 2015); *see also Hall v. Colvin,* 778 F.3d 688, 691 (7th Cir. 2015). And the fact that Dr. Sykes-Bellamy is not an endocrinologist would not explain discrediting her opinion in favor of agency examiners who also are not endocrinologists. *See Roddy*, 705 F.3d at 636. Likewise, the use of a questionnaire to provide opinions would not explain discounting it in favor of agency examiners who similarly used such forms. *See id.* Finally, unlike the facts presented in the Commissioner's cited authority, *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007), Dr. Sykes-Bellamy's opinion is not contradicted by her treatment notes, the ALJ did not adequately explain why she thought it was, and there is no indication that the doctor's questionnaire responses were prepared by anyone other than her.

The ALJ also erred in assigning little weight to the opinion of Plaintiff's treating psychologist, Dr. Hird. Dr. Hird treated Plaintiff from October 23, 2015 to July 19, 2017[3], administered the Minnesota Multiphasic Personality Inventory assessment on October 23, 2015, and completed a mental impairment questionnaire on July 19, 2017, documenting her opinion. [R. 438-442, 544-606, 607-613.] Dr. Hird diagnosed Plaintiff with Major Depressive Disorder, severe, and Generalized Anxiety Disorder, and opined that she was totally disabled. [R. 607-13.]

---

[3] The Commissioner argues that Dr. Hird did not treat Plaintiff for this length of time, but rather her colleague Dr. Kimble did, suggesting that perhaps Dr. Hird was not familiar enough with Plaintiff to accurately assess her limitations. [Def.'s Mem. at 18.] Not only did the ALJ make no such distinction, but she referred to the treatment records as those of Dr. Hird, and the records themselves are signed by both providers. [R. 544-606.]

10

Specifically, she noted that Plaintiff had marked limitations in activities of daily living, social functioning, and maintaining concentration, persistence, and pace, had experienced one or two episodes of decompensation, and that her prognosis was "guarded due to her physical conditions that are exacerbated by psychological symptoms and vice versa." [*Id.*]

The ALJ declined to give Dr. Hird's opinion controlling weight, stating that the medical evidence did not support the degree of limitation she had described. [R. 22-23.] Specifically, the ALJ reasoned, the opinion was entitled to little weight because Plaintiff had never been hospitalized for her psychiatric symptoms, her psychiatric treatment had been "very conservative," and the treatment notes demonstrated "relatively normal mental status exams" with regular therapy sessions "typically focused on life stressors and physical maladies rather than psychological symptoms." [R. 23.]

The ALJ's reasoning fails for several reasons. First, here too it is not apparent to this Court why conservative treatment conflicts with the opinion of disabling impairment, and the ALJ did not explain why she thought that it did. Without a sufficient explanation of the ALJ's reasoning, she failed to build a logical bridge from the evidence to her conclusion. *See Roddy*, 705 F.3d at 636. Second, the lack of institutionalization does not equate to a finding of not disabled. *E.g., Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015). Accordingly, the fact that Plaintiff had not been hospitalized for her condition does not contradict Dr. Hird's opinion. Similarly, because episodes of decompensation do not necessarily result in hospitalization, Dr. Hird's reference to decompensation paired with the lack of hospitalization also does not render her opinion suspect. *See Larson v. Astrue*, 615 F.3d 744, 750 (7th Cir. 2010).

11

Instead of explaining why she found that Dr. Hird's treatment notes contradicted her opinion, the ALJ dismissed them as "focusing on 'life stressors and physical maladies rather than psychological symptoms,'" without explaining what she thought this distinction meant and why it was meaningful to her analysis. [R. 23.] Additionally, the same notes to which the ALJ cited also repeatedly describe Plaintiff's depressed and anxious state, her poor ability to concentrate, and her fatigue and mental dullness. [R. 23, citing R. 557, 565.] The ALJ was required to consider all of the evidence, and address not only that which supported her conclusion, but also that which undermined it. *See Zurawski*, 245 F.3d at 887. Without an explanation as to why she believed the notes conflicted with Dr. Hird's opinions, the ALJ failed to provide a logical bridge between the evidence and her conclusions. *Lambert v. Berryhill*, 896 F.3d 768, 774 (7th Cir. 2018); *Roddy*, 705 F.3d at 636.

Moreover, it was error for the ALJ to rely on her own understanding of Plaintiff's mental health to discount Dr. Hird's opinion. *See Lambert*, 896 F.3d at 774 ("ALJs must rely on expert opinions instead of determining the significance of particular medical findings themselves."); *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995) ("Severe depression is not the blues. It is a mental illness; and health professionals, in particular psychiatrists, not lawyers or judges, are the experts on it.").

Further, the Court is unpersuaded by the Commissioner's attempts to buttress the ALJ's decision to discount the opinion of Dr. Hird with rationales that the ALJ did not provide, such as by reference to contrary agency opinion evidence. *See Kastner*, 697 F.3d at 648. To be sure, the ALJ summarized the agency opinions, and concluded that they were more persuasive than Dr. Hird's, but she did not explain ***why*** she found them more persuasive. Instead, she simply stated

12

that the first reviewer found no evidence of ongoing treatment, counseling, or medication management, and that the latter two agreed. [R. 22.] Notably, the first two agency opinions had been provided before Plaintiff began treatment with Dr. Hird, and the third was provided before Dr. Hird's records and questionnaire responses were obtained. [*See* R. 105-113, 115-124, 446.] It was error to rely on outdated opinions of agency consultants where later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion. *Lambert*, 896 F.3d 776; *accord Campbell*, 627 F.3d at 309.

For each of these reasons, the ALJ's failure to give a sound explanation for discounting the opinions of Dr. Sykes-Bellamy and Dr. Hird requires remand. *See Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). The erroneous assessment of opinion evidence affected both the ALJ's determination that Plaintiff's psychiatric impairments were mild and not severe, and her determination that the restrictions described as arising from Plaintiff's diabetic neuropathy were not to be credited in determining Plaintiff's RFC. [R. 21-27.] The Court emphasizes that the Commissioner should not assume that the other issues raised by Plaintiff were omitted from this opinion because no error was found. Indeed, the Court directs the Commissioner that, on remand, care should be taken to ensure that his analysis is complete.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment [23] is GRANTED. The Commissioner's decision is reversed, and this matter is remanded for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**

Date: 10/27/2020

_____
BETH W. JANTZ
United States Magistrate Judge